IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:06-CV-230-FL

| | |
|---|---|
| GERALD DUNCAN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. Claimant Gerald Duncan seeks judicial review of the Commissioner's denial of his application for Disability Insurance Benefits (DIB). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's Motion for Judgment on the Pleadings [DE-12] be granted, Defendant's Motion for Judgment on the Pleadings [DE-17] be denied, and the case be remanded to the Commissioner for further proceedings.

## STATEMENT OF THE CASE

On July 30, 2003, Claimant filed an application for DIB. He initially claimed that he became disabled as of August 9, 2000 due to migraine headaches. Claimant's application was denied initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on October 12, 2005. At the hearing Claimant amended his alleged onset date to January 1, 2002. After the hearing, on February 8, 2006, the ALJ issued a decision denying plaintiff's claims. The Appeals Council denied Claimant's request for review on August 18, 2006, rendering the ALJ's

decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

I.  **The Standard of Review and Social Security Framework**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience, and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the ALJ committed the following errors: (1) failure to perform a proper credibility assessment; (2) improperly rejecting the opinion of Claimant's treating physician; (3) improper hypothetical presented to the VE; (4) failure to assess the testimony of Claimant's wife; and (5) improper inferences drawn from the evidence in the record.

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (R. 16, 24). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited him from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the severe impairments of migraine headaches and depression. (R. 17). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 17). Next, the ALJ determined Claimant's RFC by considering all of his subjective complaints and reviewing his medical records, and concluded that he had the ability to perform medium work activity. (R. 20). At step four, the ALJ found that Claimant had past relevant work experience as an equipment maintenance worker, musician, roofer, and plant care technician; however, Claimant could not return to his past relevant work. (R. 22). At step five the ALJ determined that Claimant could perform the work of a photocopy machine operator, laundry worker, and hospital food service worker. (R. 23). Accordingly, Claimant was not under a "disability," as defined in the Social Security Act, at any time prior to the date of the ALJ's decision. (R. 24).

4

## III. The Administrative Hearing

### A. Claimant's Testimony at the Administrative Hearing

Claimant testified at his administrative hearing. (R. 266-87). Claimant was 52 years old at the time of the hearing. (R. 267). Claimant is married and lives with his wife. (Id.). They have no children. (Id.). Claimant stated that he is right-handed, measures 5' 9" tall, and weighs 154 pounds. (Id.). Claimant completed high school and two years of college. (Id.). He stopped working in 2000, but received some short-term disability payments from the state of North Carolina in 2001 and 2002. (R. 268). Claimant's most recent job was at the North Carolina Museum of History as a general utility worker, where he worked for seven years. (R. 269). In that job, Claimant's duties included such things as setting up tables and chairs for meetings and doing minor repairs on doors. (Id.). Most of his work at the museum required Claimant to be on his feet where he would frequently lift 25 to 30 pounds and occasionally up to 100 pounds. (R. 270). Prior to working at the museum, Claimant worked at Plants by Grant, Cedar Roofs of Raleigh, and as a musician. (Id.). Claimant stated that as a musician he played the guitar, wrote music, and sang. (Id.).

Claimant stopped working in 2000 because of his cluster migraines, which he has had all of his life. (Id.). Prior to 2000, Claimant was able to work around his headaches, although he did have to miss some work. (R. 271). Claimant is now unable to play the guitar and he no longer composes music or sings. (Id.). When Claimant was working as a musician he traveled around the United States with a rock 'n rock band called The Accelerators. (R. 272). Claimant was the leader of the group and it is no longer in existence. (Id.). The band made four full length albums, one of which is still on the market,

5

although it must be special ordered from Sweden. (R. 273). Claimant did not receive any royalties from the album because it sold less than one thousand copies. (Id.). However, Claimant did receive about $900 in royalties two or three years ago when one of his songs was played on a television show. (Id.).

Although in the past Claimant was able to play music and hold down employment despite his migraines, that was because his headaches used to come and go, but now they never go away. (R. 274). Claimant testified that he has had one continuous headache since the fall of 2000. (Id.). The pain from the migraines is like jabbing a hot ice pick in your eye, along with nausea, disorientation, and fatigue. (Id.). Claimant feels nauseated every day and fatigued all the time. (R. 275). He is often forgetful and has memory and attention problems. (Id.). Claimant has also fallen due to loss of balance associated with his migraines. (R. 276). Certain things, like bright fluorescent light, sunlight, heat, and loud noise exacerbate Claimant's head pain. (Id.).

Claimant spends most days laying down in his bedroom in the dark. (R. 277). Claimant's medication is somewhat effective in relieving his pain, but he must limit the amount of medication to keep it effective. (Id.). Claimant testified that he is unable to do any household chores and his wife must do the cleaning, cooking, and pay the bills. (Id.). Claimant does not bathe or get dressed everyday and often does not eat during the day. (R. 277-78). Claimant did gain 25 to 30 pounds when he was taking the medication Neurontin, but when his medication was changed to Topomax, he lost the excess weight. (R. 278). Although Claimant doesn't eat much, he hasn't lost weight due to lack of appetite because his eating is sporatic. (Id.).

Claimant stated that he also has clinical depression, although it is treated with the medication Zoloft. (R. 279). Claimant's depression causes him to feel confused and not want to get out of bed. (Id.). He is in bed every day of the week, but for varying amounts of time. (Id.). However, when Claimant's wife is home, he tries to get out of bed and help her around the house by feeding their pet tortoise. (R. 280). Claimant's wife takes care of their cats, snakes, and lizard. (Id.). Nevertheless, Claimant spends at least 12 hours each day in bed. (R. 281). Claimant's wife works in the genetics lab with fruit flies at NC State University. (Id.).

Claimant has been seeing his treating physician, Dr. Rubino, for about 20 years. (R. 282). Although Dr. Rubino has ordered an MRI for Claimant, he has not been able to determine any underlying cause of Claimant's migraines. (Id.). Claimant controls his headaches with medication. (Id.). Claimant has also had some psychiatric counseling, which was prior to 2000. (Id.). Claimant is now unable to afford private psychiatric care. (R. 283). He did go to the county mental health department back in 1991; however, they wanted to treat Claimant for substance abuse and Claimant insisted that he did not have a substance abuse problem, but needed to be treated for depression. (Id.). Claimant stated that the reason the health department wanted to treat him for substance abuse was because he told them he drank beer a couple times a week. (R. 284). Claimant also admitted using marijuana four or five years ago in an attempt to control his nausea; however, this only helped for a short time. (Id.). Claimant now drinks about one or two beers once or twice a week. (Id.). Claimant also smokes about half a pack of cigarettes each day, although his doctor is always telling him to quit. (R. 284-85). Claimant has quit periodically and says that had no effect of his migraines. (R. 285).

Claimant testified that he rarely drives because he feels it's risky and he and his wife only have one car. (Id.). He last renewed his driver's license in 2003. (R. 286). Claimant also stated that when he was in his 20s he fractured his right ankle and then hurt it again about 10 years ago playing indoor soccer. (Id.). Claimant further stated that he has trigger finger syndrome in his thumbs and tendinitis in his elbows. (Id.). About a year ago he had injections in his thumb and earlier this year he went to physical therapy for his ankle. (R. 287). However, Claimant is not claiming disability based on his ankle impairment. (Id.)

### B. Laura Duncan's Testimony of the Administrative Hearing

Claimant's wife, Laura Duncan, testified as a witness at the administrative hearing. (R. 288-93). Duncan stated that she had known Claimant since 1988 and they had been married for six years. (R. 288). Prior to 2000, Claimant was a very motivated person who got up everyday and worked hard, but now there are many things he cannot do. (R. 289). Duncan testified that Claimant is a person of very strong character and intelligence. (Id.). But since 2000 he's been unable to cook, do laundry, yard work, or even shower on his own because he is unstable on his feet and often confused and disoriented. (Id.). Duncan and Claimant used to socialize by going to events such as weddings, graduations, Christmas and birthday parties, and baptisms, but now Claimant is unable to attend these events. (R. 289-90). Duncan works full-time, and when she gets home from work, Claimant is usually lying down. (R. 290). He never reads and Duncan drives Claimant to most of the places he needs to go, like doctor appointments. (Id.). Duncan also testified that Claimant has trouble following normal conversation and it upsets him because he is unable to do so. (Id.).

8

Duncan stated that Claimant will try any pain medication that his doctor suggests, but it seems that Demerol is the only drug that provides any relief. (Id.). Duncan indicated that when Claimant was working he had occasional migraines, then one day Claimant called Duncan to pick him up from work, which was unusual. (R. 291). The following day, Claimant called Duncan again and Duncan realized that Claimant was having an unusually bad migraine. (Id.). There were no warning signs of this lasting migraine. (Id.). Neither Duncan nor Claimant's doctor have suggested that Claimant see a therapist or psychiatrist, although Claimant is taking medication for depression. (Id.). Claimant has been taking this depression medication, initially Paxil and now Zoloft, for approximately nine years. (R. 291-92). Dr. Rubino prescribes this medication. (R. 292). Claimant had been treated for severe clinical depression prior to having headaches, but Duncan did not know Claimant at that time. (Id.).

Duncan testified that she rarely sees Claimant drinking alcohol now, although he used to enjoy drinking a beer. (Id.). Claimant also used to play the guitar, but now his joints are inflamed and the trigger finger syndrome in his thumbs prevents him from playing. (Id.). Claimant no longer writes music, either. (Id.). Duncan stated that they do have a computer in their home, but Claimant does not use it. (R. 292-93). In closing, Duncan stated that although Claimant is a strong person, he's had constant pain for five years. (R. 293).

### C. The Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 293-96). The VE stated that she had reviewed Claimant's documentary evidence prior to the hearing. (R. 293). The VE described Claimant's past relevant work as an equipment maintenance

worker as medium work, although very heavy as actually performed, with a Specific Vocational Preparation (SVP) of 5 and a Dictionary of Occupational Titles (DOT) code of 899.384-010. (R. 294). She described Claimant's past work as a musician as light work with an SVP of 8 and a DOT code of 152.041-010. (Id.). She described Claimant's past work as a roofer as medium work with an SVP of 7 and a DOT code of 866.381-010. (Id.). Finally, she described Claimant's past work as a plant care worker as medium work with an SVP of 3 and a DOT code of 408.364-010. (Id.).

The ALJ then posed the following hypothetical:

> [w]e have a person the same age, education and vocational background as is the claimant, that is a younger individual . . . [who will] be 53 next month, with a better than high school education, past relevant work is the same as this claimant, capable of performing simple routine repetitive tasks at a low production pace with little interaction which do not require constant fingering. . . . could you cite jobs that such a person could perform?

(R. 294-95). The VE responded in the affirmative. (R. 295). According to the VE, such an individual could perform the following jobs: laundry worker, medium with SVP 2 and DOT code 361.684-014; food service worker, medium with SVP 2 and DOT code 319.677-014; and photocopy machine operator, light with SVP 2 and DOT code 207.685-014. (Id.).

Claimant's attorney then asked the VE whether there would be jobs available if the VE considered as credible Claimant's testimony regarding his non-exertional limitations, the need to lie down most of the day, and the inability to maintain attention and concentration. (Id.). The VE responded that there would not be any jobs such a person could perform. (Id.). Lastly, the VE stated that if Claimant could not perform sedentary work due to his frequent and uncontrolled headaches, there would not be any jobs available to him. (R. 296).

10

## IV. Claimant's Arguments

### A. Treating Physician's Opinion

Claimant argues that the ALJ improperly discredited the opinion of his treating physician, Dr. Rubino. Specifically, Claimant contends that the ALJ erred by dismissing Dr. Rubino's opinion regarding Claimant's migraine headaches because the opinion was based on Claimant's subjective complaints and was not supported by objective medical findings. The court agrees that the ALJ erred.

The ALJ must give controlling weight to the opinion of a treating source on the issues of the nature and severity of an impairment if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When evaluating and weighing medical opinions, an ALJ should consider the following non-exclusive list "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005); see Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (noting that an ALJ should accord greater weight to a treating physician's opinion because the treating physician has developed a treatment relationship with the claimant).

Dr. Rubino has been Claimant's treating physician for nearly twenty years (R. 282), and has treated Claimant for migraines on numerous occasions during the alleged period of disability (R. 262). Although Dr. Rubino has noted that Claimant's laboratory testing,

11

such as x-rays and MRIs, have been normal, Dr. Rubino also states that this is "what you expect for migraine headaches." (Id.). The ALJ discredited Dr. Rubino's opinion regarding Claimant's pain and ability to work, not because there was conflicting medical evidence, but because the ALJ felt that Dr. Rubino's opinion "seemingly was based on the claimant's subjective complaints, which are not well supported by objective clinical, laboratory, or radiographic findings." (R. 19). However, there are some conditions, such as migraine headaches, that cannot be diagnosed or confirmed through laboratory or diagnostic testing. See Stebbins v. Barnhart, No. 03-C-0117-C, 2003 U.S. Dist. LEXIS 25106, at *15 (W.D. Wisc. Aug. 20, 2003) (noting that "there is no simple, specific diagnostic test for migraine headaches") (quoting Ausman & Snyder's Medical Library, Lawyer's Edition § 6:27 at 97-98 (1990)); Ortega v. Chater, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996) (stating that "laboratory tests cannot prove the existence of migraine headaches"); Federman v. Chater, No. 95 Civ. 2892, 1996 U.S. Dist. LEXIS 2893, at *6 (S.D.N.Y. Mar. 11, 1996) (stating that "there is no test for migraine headaches"). Indeed, doctors must diagnose migraines through the presence of medical signs such as nausea, vomiting, and sensitivity to light and sound. Ortega, 933 F. Supp. at 1075. Such diagnostic techniques are recognized by the Social Security Administration. See 20 C.F.R. §§ 404.1512(b)(1), 404.1528(b), 416.912(b)(1), 416.928(b).

From the record, it appears that Claimant saw Dr. Rubino every two to four months from 1999 through 2003 for treatment of his migraines. (R. 110-149). During these visits, Claimant presented with medical signs typical of migraines, including nausea, sensitivity to light and sound, and extreme head pain. (R. 138, 146, 262). Although the ALJ seems

12

Case 4:06-cv-00230-FL   Document 19   Filed 12/04/07   Page 12 of 16

to take issue with the fact that Claimant has not seen a specialist (R. 21), it does not appear that Dr. Rubino ever recommended specialty care.

On September 5, 2005 Dr. Rubino submitted a letter detailing his treatment of Claimant. (R. 198). In that letter, Dr. Rubino states that Claimant experiences frequent severe migraine headaches that often incapacitate him, requiring Demerol and bedrest. (Id.). Throughout his treatment of Claimant, Dr. Rubino has prescribed several other medications, such as Maxalt, Imitrex, and Corgard, none of which have provided significant pain relief. (R. 138, 139, 149, 198). Due to the frequency and intensity of Claimant's migraines, Dr. Rubino opined that Claimant was unable to reliably perform work on a regular basis. (R. 198).

The ALJ seems to believe that Claimant merely has a drug addiction to Demerol (R. 21); however, the ALJ is not a medical doctor and there is no evidence in the record to suggest that Claimant is seeking Demerol due to an addiction. Because there is no medical evidence in the record that contradicts Dr. Rubino's opinions regarding the severity of Claimant's migraines, and his opinions are consistent with the record as whole, the ALJ should have afforded Dr. Rubino's opinions controlling weight. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[1]

---

[1] In order for a treating physician's opinion to be given controlling weight, the opinion should be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). There is no requirement that medical tests be performed. Here, the accepted and only method for diagnosing migraines is through medical signs; accordingly, the absence of objective medical testing should not impact the weight given to Dr. Rubino's opinion.

13

## B. Pain and Credibility Assessment

Claimant argues that substantial evidence does not support the ALJ's findings that his allegations of pain and functional restrictions are not fully credible. For many of the same reasons discussed above, the court agrees.

In assessing a claimant's credibility, the ALJ must follow a two step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. While objective medical evidence of a claimant's pain may be considered, the ALJ may not discredit a claimant's allegations of pain "solely because they are not substantiated by objective evidence of the pain itself or its severity." Id. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, the ALJ found that "claimant has a medically determinable impairment that could reasonably be expected to produce the pain and other symptoms alleged, [but] the evidence does not support the claimant's allegations of intensity and persistence of such

14

pain and other symptoms." (R. 21). The ALJ noted that Claimant continued to play in a band until 2000 (id.); however, Claimant testified that until 2000 his migraines weren't that severe and were manageable (R. 271). After 2000, Claimant's migraines became more frequent and severe. (R. 271, 274). The ALJ also pointed out that although Claimant stated that he didn't drive due to his headaches, he renewed his driver's license in 2003. (R. 21). In fact, Claimant did not testify that he never drives, but stated that he rarely drives. (R. 285-86). As previously noted, the ALJ seems troubled that Claimant has not seen a specialist, opines that Claimant might have a drug addiction (id. 21), and finally states that, "[t]here is simply no objective medical evidence or explanation for his going from cluster headaches that he managed to work around . . . to one continuous headache that has incapacitated him." (R. 22). The ALJ goes on to state that because there is no corroborating evidence of the severity of Claimant's pain and Claimant has failed to stop smoking, his complaints of continual head pain are "simply not plausible." (Id.).

In fact, there was corroborating evidence of Claimant's pain and functional restrictions by Claimant's wife and treating physician, Dr. Rubino. Obviously, the ALJ was looking for objective corroboration through medical and laboratory tests, of which there are none. As noted above, the existence of migraines cannot be proven through objective testing. Further, the ALJ's opinion that Claimant has a drug addiction is not supported by the record. Accordingly, the ALJ improperly required the existence of objective evidence of Claimant's pain in making his credibility determination.

The case should be remanded for a proper credibility assessment, along with a re-evaluation of the weight to be given to Dr. Rubino's opinions. Because the court finds that remand is appropriate, it does not reach Claimant's other arguments.

15

## CONCLUSION

Accordingly, it is **RECOMMENDED** that Claimant's motion for judgment on the pleadings be **GRANTED**, and defendant's motion for judgment on the pleadings be **DENIED**, and the case be remanded to the Commissioner for a rehearing consistent with this Memorandum and Recommendation. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 4th day of December, 2007.

DAVID W. DANIEL
United States Magistrate Judge